IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:24-cv-784 |
| | ) | |
| MAYUEN K. AJAK; YIER B. DENG; | ) | |
| BOL C. GUOT; GABRIEL M. KUOT; and | ) | |
| GOLDEN D4 HEART TAX SERVICES, | ) | |
| LLC d/b/a GOLDEN HEART TAX | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

The United States of America, for its complaint against Mayuen K. Ajak, Yier B. Deng,

Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC d/b/a Golden Heart Tax

Services, LLC, alleges the following:

1.     This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden

D4 Heart Tax Services, LLC, and anyone in active concert or participation with them, from:

    a.  acting as federal tax return preparers or requesting, assisting in, or
directing the preparation or filing of federal tax returns, amended
returns, or other related documents or forms for any person or entity
other than themselves;

    b.  preparing or assisting in preparing federal tax returns that they know
or reasonably should know would result in an understatement of tax
liability or the overstatement of federal tax refund(s) as penalized by
26 U.S.C. § 6694;

    c.  owning, operating, managing, working in, investing in, providing
capital or loans to, receiving fees or remuneration from, controlling,
licensing, consulting with, or franchising a tax return preparation
business;

1

    d.   training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

    e.   collecting or gathering Forms W-2 and Forms 1099 from individuals or entities who want to have a federal tax return prepared, or referring any person or entity to a tax preparation firm or to a tax return preparer or otherwise suggesting that a taxpayer engage any given tax preparation firm or tax return preparer;

    f.   maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

    g.   engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

    h.   engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

This action also seeks, under 26 U.S.C. § 7402, an order requiring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to disgorge to the United States the ill-gotten gains that Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC received (in the form of tax preparation fees) for the preparation of federal tax returns making false and/or fraudulent claims.

### Authorization

2.      This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

### Jurisdiction and Venue

3.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because most of the Defendants reside in this judicial district and a substantial part of the activities giving rise to this suit occurred in this judicial district.

## Defendants

5.      Mayuen K. Ajak resides in Dallas, Texas.  He has been preparing tax returns for others since at least 2016.  In addition to preparing tax returns, Ajak employs, and has employed, either directly or through Golden D4 Heart Tax Services, LLC, one or more persons who prepare tax returns.

6.      Yier B. Deng resides in Princeton, Texas.  He has been preparing tax returns for others since at least 2016.  In addition to preparing tax returns, Deng employs, and has employed, either directly or through Golden D4 Heart Tax Services, LLC, one or more persons who prepare tax returns.

7.      Bol C. Guot resides in Fate, Texas.  He has been preparing tax returns for others since at least 2016.  In addition to preparing tax returns, Guot employs, and has employed, either directly or through Golden D4 Heart Tax Services, LLC, one or more persons who prepare tax returns.

8.      Gabriel M. Kuot resides in Royse City, Texas.  He has been preparing tax returns for others since at least 2016.  In addition to preparing tax returns, Kuot employs, and has employed, either directly or through Golden D4 Heart Tax Services, LLC, one or more persons who prepare tax returns.

9.      On or about April 16, 2018, Ajak, Deng, Guot, and Kuot incorporated Golden D4 Heart Tax Services, LLC in Texas.  Ajak, Deng, Guot, and Kuot are identified as the managing members of Golden D4 Heart Tax Services, LLC.  Golden D4 Heart Tax Services, LLC operates

tax preparation stores in Texas, Missouri, Nebraska, and Arizona doing business as Golden Heart Tax Services, LLC ("Golden Heart"). Golden D4 Heart Tax Services, LLC employs, and has employed, one or more persons who prepare tax returns.

### The Defendants' Activities

10. The Defendants, and those acting at their direction or with their knowledge and consent, prepare tax returns to generate bogus refunds for customers, enabling the Defendants to charge high and undisclosed fees and maximize profits at the expense of the United States Treasury.

11. Many of the Defendants' customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. Customers often have no knowledge that the Defendants have prepared and filed false tax returns on their behalf. For others, the Defendants mislead customers about what can "legally" be claimed on their tax returns, particularly with respect to various credits and deductions, and by promising customers thousands of dollars of (illegal) refunds to convince them to have the Defendants prepare their tax returns.

12. Many of the Defendants' customers are immigrants to the United States who speak and/or read little or no English and have little or no knowledge of, or experience preparing or filing, United States federal income tax returns. For example, the individual Defendants, who are originally from Sudan, solicit many fellow Sudanese immigrants as customers, often at their customers' places of employment (commonly meatpacking or other cattle-related businesses). The Defendants take advantage of their customers' illiteracy in English and lack of knowledge or sophistication regarding federal income taxes and tax returns in preparing returns with falsehoods.

4

13.     The Defendants, and those acting at their direction or with their knowledge and consent, make false claims on tax returns, particularly on the forms attached to those returns, in order to improperly increase customers' refunds.

14.     The Defendants, and those acting at their direction or with their knowledge and consent, request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits.  Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

15.     The Defendants charge high fees which are deducted from the customer's tax refund, often without the customer being told the amount that the Defendants actually charged for preparing the tax return.

16.     In 2020, 2021, 2022, and 2023, Golden Heart prepared and filed with the IRS at least the following number of tax returns identifying it as the paid preparation firm.  As shown below, Golden Heart prepared an extremely high percentage of tax returns requesting a refund.

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC[1] |
|---|---|---|---|---|
| 2020 | 640 | 637 | 99.5% | 414 (64.7%) |
| 2021 | 1,066 | 1,059 | 99.3% | 615 (57.7%) |
| 2022 | 1,420 | 1,420 | 100% | 637 (44.9%) |
| 2023 | 1,653 | 1,640 | 99.2% | 876 (53%) |

17.     The IRS estimates the harm to the United States in the form of underreported and unpaid taxes from the Defendants' tax-return preparation in 2021, 2022, and 2023 (for tax years 2020, 2021, and 2022) could be as much as $10 million or more. This estimate is based on the IRS's interviews of customers identifying false claims on their tax returns, the number of tax

---

[1]The Earned Income Tax Credit is a refundable tax credit available to certain low-income working people in varying amounts based on the taxpayer's income, filing status, and claimed number of dependents.

returns identified as being prepared by the Defendants claiming Schedule C business losses, fuel

tax credits, COVD-19-related credits, and education credits, and the amounts of those claimed

business losses and/or credits.

18.    The Defendants engage in unlawful tax return preparation practices including:

a.    Making false claims for the Earned Income Tax Credit;

b.    Circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

c.    Fabricating businesses and related business income and expenses reported on Forms Schedule C;

d.    Falsely claiming the federal Fuel Tax Credit;

e.    Falsely claiming COVID-19-related tax credits for the cost of providing paid sick and family leave wages;

f.    Claiming education credits to which their customers are not entitled;

g.    Failing to identify the actual paid preparer of the tax return;

h.    Failing to provide customers with a copy of the completed tax return; and

i.    Charging deceptive and undisclosed fees.

**Phony Claims for the Earned Income Tax Credit
and Failure to Comply with Due Diligence Requirements**

19.    The Defendants, and those acting at their direction or with their knowledge and

consent, prepare tax returns that include fraudulent claims for the Earned Income Tax Credit

("EITC") often based on fabricated business income and expenses, bogus or improperly-claimed

dependents, and/or false filing status.

20.    The EITC is a refundable tax credit available to certain low-income working

people. The amount of the credit is based on the taxpayer's income, filing status, and claimed

number of dependents.  Because the EITC is a refundable credit, claiming an EITC can, in

certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

21.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. The amount of the credit increases as income increases between $1 and a set income amount and decreases as income increases beyond another higher set income amount.  For example, in tax year 2022 the maximum EITC was $6,935 and was available to eligible individuals with three dependent children who earned income between $15,400 and $20,150.  Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range."

22.     Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit. Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

23.     The Defendants, and those acting at their direction or with their knowledge and consent, falsify information to claim the maximum EITC for customers.  For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants, and those acting at their direction or with their knowledge and consent, inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

24.     Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers.  These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not ignore the implications of information furnished to (or known by) the tax return preparer, and the tax return preparer must make reasonable inquiries if a reasonable and well-informed tax return preparer knowledgeable in the law would conclude that the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete.  Tax return preparers must also document their compliance with these requirements and keep that documentation for three years.

25.     The Defendants, and those acting at their direction or with their knowledge and consent, fail to comply with the due diligence requirements.  The Defendants, and those acting at their direction or with their knowledge and consent, show an intentional disregard for the tax laws and in particular for the due diligence requirements.

26.     In 2018 and 2022, the IRS investigated whether Ajak complied with the due diligence requirements when preparing tax returns.  In 2018, the IRS reviewed 50 tax year 2017 tax returns that Ajak prepared in 2018, reviewed the related customer files, and interviewed Ajak. The IRS determined that Ajak failed to comply with the due diligence requirements when claiming the: Earned Income Tax Credit on 49 of the tax returns; Child Tax Credit on 47 of the tax returns; and American Opportunity education credit on 15 of the tax returns. Following the investigation, the IRS assessed penalties against Ajak in the amount of $56,610 for 111 violations of 26 U.S.C. § 6695(g) related for claiming these tax credits without meeting the due diligence requirements.

27.     In 2022, the IRS reviewed 50 tax year 2020 tax returns that Ajak prepared in 2021, reviewed the related customer files, and interviewed Ajak. The IRS determined that Ajak failed to comply with the due diligence requirements when claiming the: Earned Income Tax Credit on 50 of the tax returns; Child Tax Credit on 44 of the tax returns; American Opportunity education credit on 17 of the tax returns; and Head of Household filing status on 42 of the tax returns. The IRS assessed penalties against Ajak in the amount of $82,620 for 153 violations of 26 U.S.C. § 6695(g) related for claiming these tax credits and filing status without meeting the due diligence requirements.

**Fabricated Schedule C Business Income and Expenses**

28.     The Defendants, and those acting at their direction or with their knowledge and consent, prepare tax returns reporting non-existent businesses on Forms Schedule C.  On some of these returns, the Defendants, and those acting at their direction or with their knowledge and consent, report substantial business income, but little or no expenses.  On other returns, the Defendants, and those acting at their direction or with their knowledge and consent, report substantial expenses, but little or no income.  The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability.

29.     The Defendants frequently prepare tax returns that include a Form Schedule C reporting false expenses to generate a phony business loss to fraudulently offset customers' wage income, reduce their taxable income, increase the claimed EITC, and increase their tax refund.

30.     In 2020, 2021, 2022, and 2023, the Defendants claimed on the Form Schedule C a self-employed business loss on at least the following number of tax returns identifying them as the paid preparers:

| Preparer | Prepared in 2020 | Prepared in 2021 | Prepared in 2022 | Prepared in 2023 |
|---|---|---|---|---|
| Golden Heart Tax Services (Total) | 307 | 441 | 267 | 871 |
| Ajak | 0 | 433 | 5 | 125 |
| Deng | 2 | 2 | 261 | 222 |
| Guot | 305 | 6 | 1 | 167 |
| Kuot | 0 | 0 | 0 | 333 |

**<u>Customer 1</u>**

31.     For example, Ajak prepared the 2020 and 2021 federal income tax returns of Customer 1 of Euless, Texas, at the Golden Heart office at 11440 Empire Central Drive, Suite 250, Dallas, Texas. Customer 1's 2021 tax return falsely identified Deng as the paid preparer.

32.     Customer 1 was employed at a food service company in 2020 and 2021. Customer 1 provided Ajak with a copy of her Forms W-2 at the time these tax returns were prepared. Customer 1 did not own or operate a business in 2020 and 2021. When preparing these tax returns, Ajak did not ask Customer 1 whether she owned a business, and Customer 1 never told Ajak that she owned a business.

33.     On the Schedule C attached to the 2020 tax return, Ajak falsely claimed that Customer 1 owned a business, not identified by name or type of business, that incurred a $21,833 loss in 2020.  Ajak falsely claimed that Customer 1's non-existent business received $5,467 in gross receipts or sales and incurred expenses totaling $27,300, including $6,000 in car and truck expenses, $3,875 for insurance, $7,215 for repairs and maintenance, $1,752 in taxes and licenses,

$3,421 in deductible meal expenses, and $5,037 in other expenses.  The "other expenses" included $2,185 for a cell phone, $1,245 for "booking fees," and $1,125 for "Uber adjustment fees," even though Customer 1 did not drive for Uber.  Customer 1 did not know that Ajak reported this non-existent business and related expenses on her 2020 tax return.  By reporting this fabricated loss, Ajak fraudulently claimed a bogus EITC in the amount of $1,214 and a bogus refund in the amount of $7,953 on Customer 1's 2020 tax return.

34.    On the Schedule C attached to the 2021 tax return, Ajak falsely claimed that Customer 1 owned a business, not identified by name or type of business, that incurred a $6,435 loss in 2021.  Ajak falsely claimed that Customer 1's non-existent business received $5,241 in gross receipts or sales and incurred expenses totaling $11,676, including $7,012 in car and truck expenses (for purportedly driving 12,521 miles for business) and $4,664 in other expenses. The "other expenses" included $2,412 for a cell phone, $550 for "booking fees," and $1,524 for "Uber adjustment fees," even though Customer 1 did not drive for Uber.  Customer 1 did not know that Ajak reported this non-existent business and related expenses on her 2021 tax return. By reporting this fabricated loss, Ajak fraudulently claimed a bogus EITC in the amount of $3,494 and a false and overstated refund in the amount of $9,644 on Customer 1's 2021 tax return.

**Customer 2**

35.    Kuot prepared the 2020, 2021, and 2022 federal income tax returns of Customer 2 of St. Joseph, Missouri, at the Golden Heart office at 3434 Ashland Avenue, St. Joseph, Missouri. Customer 2's 2020 tax return falsely identified Ajak as the preparer, and her 2021 tax return falsely identified Deng as the paid preparer.

36.     Customer 2 was employed at a meat processing facility in 2020, 2021, and 2022. Customer 2 provided Kuot with a copy of her Forms W-2 and social security numbers of her dependents at the time these tax returns were prepared. Customer 2 did not own or operate a business in 2020, 2021, and 2022. When preparing these tax returns, Kuot did not ask Customer 2 whether she owned a business, and Customer 2 never told Kuot that she owned a business, earned any income through a business, or incurred any expenses for a business.

37.     On the Schedule C attached to the 2020 tax return, Kuot falsely claimed that Customer 2 owned a braiding and dressing business that incurred a $15,887 loss in 2020.  Kuot falsely claimed that Customer 2's non-existent business received $3,564 in gross receipts or sales and incurred expenses totaling $19,451, including $6,881 in car and truck expenses, $1,235 for insurance, and $11,335 in other expenses (repairs and maintenance of $2,654, travel of $1,265, meals of $3,658, utilities of $2,658, and a cell phone of $1,100).  By reporting this fabricated loss, Kuot claimed a bogus EITC in the amount of $3,668 and a false and overstated refund in the amount of $11,642 on Customer 2's 2020 tax return.

38.     On the Schedule C attached to the 2021 tax return, Kuot falsely claimed that Customer 2 owned a braiding and dressing business that incurred a $9,041 loss in 2021.  Kuot falsely claimed that Customer 2's non-existent business received $3,540 in gross receipts or sales and incurred expenses totaling $12,581, including $112 in car and truck expenses, $1,254 for repairs and maintenance, and $11,215 in other expenses (a second repairs and maintenance of $1,685, travel of $1,500, meals of $2,540, utilities of $3,540, and a cell phone of $1,950).  By reporting this fabricated loss, Kuot fraudulently claimed a bogus refund in the amount of $11,943 on Customer 2's 2021 tax return.

39.    On the Schedule C attached to the 2022 tax return, Kuot falsely claimed that Customer 2 owned a braiding and dressing business that incurred a $21,448 loss in 2022.  Kuot falsely claimed that Customer 2's non-existent business received $5,822 in gross receipts or sales and incurred expenses totaling $27,270, including $5,845 in car and truck expenses, $2,645 for insurance, $3,654 for repairs and maintenance, $4,656 for supplies, $1,770 for deductible meals and entertainment, $1,542 for utilities, and $7,158 in other expenses (a second repairs and maintenance of $1,685, the same as reported on the 2021 tax return, travel of $865, a second meals expense of $950, a second utilities expense of $1,659, and a cell phone of $1,999).   By reporting this fabricated loss, Kuot claimed a bogus EITC in the amount of $3,006 and a false and overstated refund in the amount of $8,769 on Customer 2's 2022 tax return.

40.    Customer 2 did not know that Kuot reported the non-existent business and related phony expenses on these tax returns.  Kuot did not review the completed tax returns with Customer 2, but only told her the amount of her refund. Kuot also did not provide Customer 2 with complete copies of her tax returns. Kuot and Golden Heart subtracted the tax preparation fees from Customer 2's tax refunds, so Customer 2 does not know how much she was charged to have these tax returns prepared and was never provided an answer when she asked for the fee amount.

**Customer 3**

41.    Kuot prepared the 2021 and 2022 federal income tax returns of Customer 3 of St. Joseph, Missouri, at the Golden Heart office at 3434 Ashland Avenue, St. Joseph, Missouri. The 2021 tax return falsely reports that Deng prepared the return.

42.    Customer 3 was employed at a meat packing business in 2021 and 2022. Customer 3 did not drive for Uber either of these years. Customer 3 provided Kuot with a copy

of his Forms W-2 at the time these tax returns were prepared. Customer 3 never told Kuot that he drove for Uber or owned a business, or earned any income or incurred any expenses driving for Uber or owning a business.

43.    On the Schedule C attached to the 2021 tax return, Kuot falsely claimed that Customer 3 was an Uber driver and, through that self-employment, incurred a $14,052 loss in 2021. Kuot falsely claimed that Customer 3 received $3,542 driving for Uber and incurred expenses totaling $17,594, including $8,926 in car and truck expenses and $8,668 in other expenses. The other expenses included $2,658 for a cell phone and other apparently personal, non-deductible expenses of $2,510 for "working on house" and $3,500 for "remodelling [sic]." By reporting this fabricated loss, Kuot claimed a bogus refund in the amount of $5,970 on Customer 3's 2021 tax return.

44.    On the Schedule C attached to the 2022 tax return, Kuot falsely claimed that Customer 3 was an Uber driver and, through that self-employment, incurred a $9,518 loss in 2022. Kuot falsely claimed that Customer 3 received $3,651 driving for Uber and incurred expenses totaling $13,169, including $4,993 in car and truck expenses, $1,456 for insurance, $1,520 for utilities, and $5,200 in other expenses. The other expenses included $1,652 for a cell phone, $28 and $23 for "paid tax," $326 for "peggy campbell county," and other apparently personal, non-deductible expenses of $1,521 for "working on house" and $1,650 for "remodelling [sic]." By reporting this fabricated loss, Kuot claimed a bogus refund in the amount of $3,984 on Customer 3's 2022 tax return.

45.    Customer 3 did not know that Kuot reported the phony Uber business income and expenses on these tax returns. Kuot and Golden Heart subtracted the tax preparation fees from

Customer 3's tax refunds, so Customer 3 does not know how much he was charged to have these tax returns prepared.

**Customer 4**

46.    Deng prepared the 2022 federal income tax return of Customer 4 of Omaha, Nebraska.  The return falsely identifies Guot as the paid preparer.

47.    Customer 4's highest level of education is high school in Sudan.

48.    Customer 4 did not own or operate a business in 2022 and only provided Deng with a copy of her Form W-2 from her job.

49.    On the Schedule C attached to the tax return, Deng falsely claimed that Customer 4 owned a business, not identified by name or type of business, that incurred a $20,813 loss in 2022. Deng falsely claimed that Customer 4's non-existent business did not have any sales or receive any gross receipts, but incurred expenses totaling $20,813, including $3,652 for insurance, $4,652 for renting or leasing business property, $9,856 for deductible meals, and $2,653 for a cell phone.  Customer 4 did not know that Deng reported this non-existent business and related expenses on her tax return.

50.    By reporting this fabricated loss, Deng claimed a bogus EITC in the amount of $3,319 and a bogus refund in the amount of $5,416 on Customer 4's 2022 tax return.  Customer 4 does not know how much she was charged to have the tax return prepared, as Deng and Golden Heart subtracted the tax preparation fee from her refund.

**Customer 5**

51.    Guot prepared the 2022 federal income tax return of Customer 5 of Cactus, Texas.

Customer 5 was employed at a cattle-related business in 2022. Customer 5 provided Guot with a copy of his ID, social security card, Form W-2, and bank account information. Customer 5 did not own or operate a business in 2022 and never told Guot that he owned a business.

52.    On the Schedule C attached to the 2022 tax return, Guot falsely claimed that Customer 5 owned a business, not identified by name or type of business, that incurred a $20,959 loss in 2020.  Guot falsely claimed that Customer 5's non-existent business received $6,963 in gross receipts or sales and incurred expenses totaling $27,922, including $11,326 in car and truck expenses, $1,458 for insurance, $5,867 for repairs and maintenance, $1,205 for supplies, $1,968 in taxes and licenses, and $6,098 in deductible meal expenses. By reporting this fabricated loss, Guot claimed a bogus refund in the amount of $4,691 on Customer 5's 2022 tax return.

53.    Customer 5 did not receive a copy of his 2022 tax return and did not know that it reported a non-existent business and related expenses on his 2022 tax return.

**Customer 6**

54.    Deng prepared the 2021 federal income tax return of Customer 6 of Glendale, Arizona.  Customer 6 communicated with Deng by email but believes that Golden Heart has an office in Glendale, Arizona in addition to the main office in Dallas, Texas.

55.    Customer 6 provided Deng with a copy of her Form W-2. Customer 6 did not work for Uber in 2021, did not own or operate a business, and did not attend college. However, Deng suggested to Customer 6 that Deng report on Customer 6's tax return that she attended college and worked for Uber, but Customer 6 told Deng that was not true and not to report that on the return.

56.    Despite Customer 6's instruction not to, Deng falsely claimed on the Schedule C attached to her tax return, that Customer 6 owned a business and received a Form 1099 from

Uber, that incurred a $10,498 loss in 2021. Deng falsely claimed that Customer 6 received $5,548 from Uber (there is no record of any such income or any Form 1099 from Uber) and incurred expenses totaling $16,046, including $3,591 for car and truck expenses, $3,147 for insurance, $3,721 for repairs and maintenance, and $5,587 (including for bogus Uber-related expenses and $1,985 for a cell phone). Customer 6 did not know that Deng reported this non-existent business and related expenses on her tax return as she never received a copy of her tax return.

57.     By reporting this fabricated loss, Deng claimed a bogus EITC in the amount of $2,091 and a false and overstated refund in the amount of $8,154 on Customer 6's 2021 tax return. Customer 6 does not know how much she was charged to have the tax return prepared, as Deng and Golden Heart subtracted the tax preparation fee from her refund.

### Fraudulent Fuel Tax Credits

58.     The Defendants prepare and file federal income tax returns for customers on which they improperly claim false or fraudulent fuel tax credits using IRS Form 4136, "Credit for Federal Tax Paid on Fuels." The fuel tax credit is available only to taxpayers who operate farm equipment or other off-highway business vehicles, or have some other narrow uses for fuel. Moreover, the equipment or vehicles using the fuel must not be registered for highway uses.

59.     Internal Revenue Code section 6421(a) provides a tax credit for fuel used in an off-highway business use. Off-highway business use is any off-highway use of fuel in a trade or business or in an income-producing activity where the equipment or vehicle is not registered and not required to be registered for use on public highways. Examples of off-highway business fuel use include: (1) in stationary machines such as generators, compressors, power saws, and similar equipment; (2) for cleaning purposes; and (3) in forklift trucks, bulldozers, and earthmovers.

60.    A highway vehicle is any "self-propelled vehicle designed to carry a load over public highways, whether or not it is also designed to perform other functions." A public highway includes any road in the United States that is not a private roadway. This includes federal, state, county, and city roads and streets. These highway vehicles are not eligible for the fuel tax credit. The following highway vehicles are <u>not</u> eligible for the fuel tax credit: passenger automobiles, motorcycles, buses, and highway-type trucks and truck tractors.

61.    In short, the fuel tax credit does not apply to passenger cars or other vehicles that are registered or required to be registered to drive on public highways.

62.    The Defendants claim the fuel tax credit for fabricated and non-qualifying fuel purchases.

63.    In 2020, 2021, 2022, and 2023, the Defendants claimed the fuel tax credit on at least the following number of tax returns identifying them as the paid preparers:

| Preparer | Prepared in 2020 | Prepared in 2021 | Prepared in 2022 | Prepared in 2023 |
|---|---|---|---|---|
| Golden Heart Tax Services (Total) | 97 | 76 | 40 | 104 |
| Ajak | 0 | 74 | 2 | 20 |
| Deng | 2 | 0 | 37 | 28 |
| Guot | 95 | 2 | 1 | 41 |
| Kuot | 0 | 0 | 0 | 14 |

### <u>Customer 7</u>

64.    For example, Kuot prepared the 2022 federal income tax return of Customer 7 of Kansas City, Missouri, at the Golden Heart office at 3434 Ashland Avenue, St. Joseph, Missouri.

65.    Customer 7 was employed as an Amazon truck driver in 2022.  Customer 7 did not operate or purchase fuel for an off-highway vehicle.  Customer 7 provided Kuot with his

Form 1099 identifying his employer and income. Customer 7's tax return reports his total income for 2022 as $20,061. Kuot falsely reported on Customer 7's 2022 tax return that Customer 7 purchased 16,894 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 17 would have incurred a gas expense in the amount of $33,788, more than his reported total income. Kuot claimed a bogus fuel tax credit in the amount of $3,092, and a false and overstated refund of $8,844 on Customer 7's 2022 tax return.

66.    Customer 7 believes he was charged around $700 to have this tax return prepared. Kuot did not review the completed tax return with Customer 7.

**Customer 8**

67.    Ajak prepared the 2022 federal income tax return of Customer 8 of Arlington, Texas. Customer 8 communicated with Ajak by email and text message.

68.    Customer 8 received wages totaling $23,165 in 2022 and drove for Uber. Customer 8 purchased gasoline for his car as part of his Uber work, and not for any off-highway business use. Customer 8 provided Ajak with his Form W-2 and Form 1099 showing that he drove for Uber. Ajak falsely reported on Customer 8's 2022 tax return that Customer 8 purchased 12,605 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 24 would have incurred a gas expense in the amount of $25,210, more than his reported total income in 2022. Ajak claimed a bogus fuel tax credit in the amount of $1,645, and a false and overstated refund of $4,622 on Customer 8's 2022 tax return.

69.     The IRS examined and made adjustments to 30 tax returns for tax years 2016 through 2021 that identified Ajak as the preparer and falsely claimed the fuel tax credit. The IRS assessed $178,529 in additional taxes following these examinations.

70.     The IRS examined and made adjustments to 38 tax returns for tax years 2018 and 2021 that identified Deng as the preparer and falsely claimed the fuel tax credit. The IRS assessed $214,462 in additional taxes following these examinations.

71.     The IRS examined and made adjustments to 38 tax returns for tax year 2019 that identified Guot as the preparer and falsely claimed the fuel tax credit. The IRS assessed $212,908 in additional taxes following these examinations.

72.     The IRS examined and made adjustments to 33 tax returns for tax years 2015 through 2017 that identified Kuot as the preparer and falsely claimed the fuel tax credit. The IRS assessed $97,627 in additional taxes following these examinations.

73.     Ajak, Deng, Guot, and Kuot also claimed bogus fuel tax credits on their own federal income tax returns.

74.     Ajak's tax returns falsely report astounding amounts of gasoline purchased for off-highway business use.  Ajak's 2019 tax return (which identifies Guot as the preparer) falsely reports that he purchased 99,526 gallons of fuel for off-highway business use and claims an $18,213 fuel tax credit.  Ajak's 2020 tax return falsely reports that he purchased 177,985 gallons of fuel for off-highway business use and claims a $32,571 fuel tax credit.  Ajak's 2021 tax return (which identifies Deng as the preparer) falsely reports that he purchased 102,415 gallons of fuel for off-highway business use and claims an $18,742 fuel tax credit.  Ajak's 2022 tax return falsely reports that he purchased 75,112 gallons of fuel for off-highway business use and claims a $13,745 fuel tax credit.  Assuming, conservatively, that the reported gas was purchased at

20

$2.00 per gallon, Ajak would have incurred a gas expense of over $910,000 over a four-year period to purchase the reported amounts of gas.

75.     In part due to the large bogus fuel tax credits, Ajak's 2019, 2020, 2021, and 2022 tax returns claimed bogus refunds in the amounts of $9,519, $17,291, $20,731, and $15,621, respectively.

76.     Deng's tax returns likewise falsely report astounding amounts of gasoline purchased for off-highway business use. Deng's 2019 tax return (which identifies Guot as the preparer) falsely reports that he purchased 78,655 gallons of fuel for off-highway business use and claims an $14,394 fuel tax credit. Deng's 2020 tax return (which identifies Ajak as the preparer) falsely reports that he purchased 74,562 gallons of fuel for off-highway business use and claims a $13,645 fuel tax credit. Deng's 2021 tax return (which identifies Ajak as the preparer) falsely reports that he purchased 78,897 gallons of fuel for off-highway business use and claims a $14,438 fuel tax credit. Assuming, conservatively, that the reported gas was purchased at $2.00 per gallon, Deng would have incurred a gas expense of over $464,000 over a three-year period to purchase the reported amounts of gas.

77.     In part due to the large bogus fuel tax credits, Deng's 2019, 2020, and 2021 tax returns claimed bogus refunds in the amounts of $11,491, $16,635, and $18,123, respectively.

78.     Guot's tax returns also falsely report astounding amounts of gasoline purchased for off-highway business use. Guot's 2019 tax return falsely reports that he purchased 87,542 gallons of fuel for off-highway business use and claims an $16,020 fuel tax credit. Guot's 2020 tax return (which identifies Ajak as the preparer) falsely reports that he purchased 159,522 gallons of fuel for off-highway business use and claims a $29,193 fuel tax credit. Guot's 2021 tax return (which identifies Ajak as the preparer) falsely reports that he purchased 67,898 gallons

of fuel for off-highway business use and claims a $12,425 fuel tax credit. Assuming, conservatively, that the reported gas was purchased at $2.00 per gallon, Guot would have incurred a gas expense of over $629,000 over a three-year period to purchase the reported amounts of gas.

79.    In part due to the large bogus fuel tax credits, Guot's 2019, 2020, and 2021 tax returns claimed bogus refunds in the amounts of $14,839, $17,696, and $22,454, respectively.

80.    Kuot's tax returns also falsely report astounding amounts of gasoline purchased for off-highway business use. Kuot's 2019 tax return (which identifies Guot as the preparer) falsely reports that he purchased 75,645 gallons of fuel for off-highway business use and claims a $13,843 fuel tax credit. Kuot's 2020 tax return (which identifies Ajak as the preparer) falsely reports that he purchased 148,217 gallons of fuel for off-highway business use and claims a $27,124 fuel tax credit. Kuot's 2021 tax return (which identifies Ajak as the preparer) falsely reports that he purchased 89,875 gallons of fuel for off-highway business use and claims a $16,447 fuel tax credit. Kuot's 2022 tax return falsely reports that he purchased 49,874 gallons of fuel for off-highway business use and claims a $9,127 fuel tax credit. Assuming, conservatively, that the reported gas was purchased at $2.00 per gallon, Kuot would have incurred a gas expense of over $727,000 over a four-year period to purchase the reported amounts of gas.

81.    In part due to the large bogus fuel tax credits, Kuot's 2019, 2020, and 2021 tax returns claimed bogus refunds in the amounts of $16,462, $18,120, $19,447, and $11,100, respectively.

**False COVID-19 Credits**

82.    In response to the COVID-19 pandemic and its economic impact, Congress passed the Families First Coronavirus Response Act (the "FFCRA"). The FFCRA provides small and midsize employers refundable tax credits that reimburse them, dollar-for-dollar, for the cost of providing paid sick and family leave wages to their employees for leave related to COVID-19. Certain self-employed individuals in similar circumstances are entitled to similar credits for being unable to work due to a COVID-19 illness.

83.    Through refundable tax credits, the FFCRA gives self-employed individuals and businesses with fewer than 500 employees funds to provide employees with paid sick and family and medical leave for reasons related to COVID-19, either for the employee's own health needs or to care for family members. Workers may receive up to 80 hours of paid sick leave for their own health needs or to care for others and up to an additional ten weeks of paid family leave to care for a child whose school or place of care or child care provider is closed or unavailable due to COVID-19 precautions. IRS Forms 7202, "Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals," must be filed to claim the refundable tax credits.

84.    The amount of the credit is based on the individual's "net earnings from self-employment" and the number of days the individual was unable to perform services due to the specified circumstances related to COVID-19.

85.    The Defendants make false claims for the COVID-19-related tax credits on the IRS Form 7202. Because the credit is only available to self-employed individuals or small businesses, the Defendants falsely report that customers are self-employed.  The Defendants then falsely claim that the customers were unable to work (at their non-existent business) due to

COVID-19 and falsely report the amount of customers' "net earnings from self-employment." The Defendants then claim fraudulent credits on the Form 7202.

### Customer 1 (continued)

86.    For example, Ajak prepared the 2020 and 2021 federal income tax returns of Customer 1, as discussed in paragraphs 31 through 34, *supra*.

87.    Customer 1 was not self-employed and did not own or operate a business in 2020 and 2021. Ajak did not ask Customer 1 any questions about whether she or any family member contracted COVID-19, or whether she was unable to work (at her job) due to COVID-19.

88.    On the Form 7202 attached to Customer 1's 2020 tax return, Ajak, knowing that Customer 1 was not self-employed, falsely reported that Customer 1 was unable to perform services as a self-employed individual for 15 days in 2020 because of coronavirus-related care that Customer 1 required. As a result, Ajak falsely claimed a COVID-19-related credit of $2,440 on Customer 1's 2020 tax return.

89.    On the Form 7202 attached to Customer 1's 2021 tax return, Ajak, knowing that Customer 1 was not self-employed, falsely reported that Customer 1 was unable to perform services as a self-employed individual for 25 days in 2021 because of coronavirus-related care that Customer 1 required. As a result, Ajak falsely claimed a COVID-19-related credit of $1,450 on Customer 1's 2021 tax return.

### Customer 2 (continued)

90.    Kuot prepared the 2021 federal income tax return of Customer 2, as discussed in paragraphs 35 through 40, *supra*.

91.    Customer 2 was not self-employed and did not own or operate a business in 2021. Kuot did not ask Customer 2 any questions about whether she or any family member contracted COVID-19, or whether she was unable to work (at her job) due to COVID-19.

92.    On the Form 7202 attached to Customer 2's 2021 tax return, Kuot falsely reported that in 2021, Customer 2 was unable to perform services as a self-employed individual for 14 days in because of coronavirus-related care that Customer 2 required, and for 25 days because of coronavirus-related care that Customer 2 provided to a son or daughter.  Kuot knew that Customer 2 was not self-employed and did not ask Customer 2 any questions about receiving or providing coronavirus-related care. As a result, Kuot falsely claimed a COVID-19-related credit of $6,865 on Customer 2's 2021 tax return.

93.    Kuot did not provide Customer 2 with a copy of the completed tax return or inform Customer 2 that he claimed a COVID-19-related credit on Customer 2's 2021 tax return.

**Customer 3 (continued)**

94.    Kuot prepared the 2021 federal income tax return of Customer 3, as discussed in paragraphs 41 through 45, *supra*.

95.    Customer 3 was not self-employed and did not own or operate a business in 2021. Kuot did not ask Customer 3 any questions about whether she or any family member contracted COVID-19, whether she had to provide care to a family member infected with COVID-19, or whether she was unable to work (at her job) due to COVID-19.

96.    On the Form 7202 attached to Customer 3's 2021 tax return, Kuot falsely reported that in 2021, Customer 3 was unable to perform services as a self-employed individual for 35 days because of coronavirus-related care that Customer 3 provided to a son or daughter. Customer 3's 2021 tax return does not identify any dependents. Kuot knew that Customer 3 was

not self-employed. As a result, Kuot falsely claimed a COVID-19-related credit of $4,025 on Customer 3's 2021 tax return. Kuot did not tell Customer 3 that Kuot claimed this credit on Customer 3's 2021 tax return.

### Customer 6 (continued)

97.    Deng prepared the 2021 federal income tax return of Customer 6, as discussed in paragraphs 54 through 57, *supra*.

98.    Customer 6 was not self-employed and did not own or operate a business in 2021. Deng asked Customer 6 whether she or any family member contracted COVID-19 in 2021, and Customer 6 told Deng that neither she nor a family member had COVID-19 in 2021.

99.    On the Form 7202 attached to Customer 6's 2021 tax return, Deng falsely reported that in 2021, Customer 6 was unable to perform services as a self-employed individual 14 days in because of coronavirus-related care that Customer 6 required.  Deng knew that Customer 6 was not self-employed. As a result, Deng falsely claimed a COVID-19-related credit of $1,730 on Customer 6's 2021 tax return. Deng did not tell Customer 6 that Deng claimed this credit on Customer 6's 2021 tax return and never provided Customer 6 with a copy of the completed tax return.

### Customer 7 (continued)

100.    Kuot prepared the 2021 federal income tax return of Customer 7, as discussed in paragraphs 64 through 67, *supra*.

101.    Kuot did not ask Customer 7 whether he or any family member contracted COVID-19 in 2021. Customer 7 did not contract COVID-19 in 2021.

102.    On the Form 7202 attached to Customer 3's 2021 tax return, Kuot falsely reported that in 2021, Customer 7 was unable to perform services as a self-employed individual for 20

days because of coronavirus-related care that Customer 7 provided to a son or daughter. As a result, Kuot falsely claimed a COVID-19-related credit of $13,380 on Customer 7's 2021 tax return. Kuot improperly calculated the false credit amount on Customer 7's total income, rather than his net self-employment earnings (working as a truck driver), which is the qualification specifically stated on the Form 7202. Kuot did not tell Customer 7 that Kuot claimed this credit on Customer 7's 2021 tax return.

### **Customer 9**

103.    Guot prepared the 2021 federal income tax return of Customer 9 from Dumas, Texas.  Customer 9 communicated with Guot by text message. Customer 9's 2021 tax return identifies Deng as the paid preparer.

104.    Customer 9 was not self-employed, did not own or operate a business in 2021, and did not inform Guot that she owned a business when Guot prepared the tax return. Guot did not ask Customer 9 whether she or any family member contracted COVID-19 in 2021. Customer 9 did not contract COVID-19 in 2021.

105.    On the Form 7202 attached to Customer 9's 2021 tax return, Guot falsely reported that in 2021, Customer 9 was unable to perform services as a self-employed individual 33 days in because of coronavirus-related care that Customer 9 required.  As a result, Guot falsely claimed a COVID-19-related credit of $560 on Customer 9's 2021 tax return. Guot did not tell Customer 9 that Guot claimed this credit on Customer 9's 2021 tax return.

### **Bogus Education Credits**

106.    The Defendants, and those acting at their direction or with their knowledge and consent, also claim bogus education expenses and falsely claim refundable education credits, including the American Opportunity education credit, on customers' federal income tax returns.

Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability. The Defendants, and those acting at their direction or with their knowledge and consent, claim false education credits on the tax returns of customers who did not attend college and had no qualifying education expenses, in order to generate a larger bogus refund.

107.    Educational institutions prepare and submit to the IRS, and provide a copy to the student, an IRS Form 1098-T to show qualifying tuition expenses billed to students and the amounts of any scholarships or grants provided to students.

108.    For Defendants' customers who did in fact receive a Form 1098-T, the claimed credits were often fabricated or otherwise did not match the information provided by the educational institution on the Forms 1098-T.  Thus, the Defendants, and those acting at their direction or with their consent, disregard the tuition amount customers actually paid and improperly claim larger amounts, up to the maximum $4,000, as qualified tuition expenses.

**Customer 3 (continued)**

109.    For example, Kuot prepared the 2022 federal income tax return of Customer 3, as discussed in paragraphs 41 through 45, *supra*.

110.    On Customer 3's 2022 tax return, Kuot falsely claimed that Customer 3 incurred $3,987 in education-related expenses to attend St. Joseph Adult Education and Literacy Program, which provides courses to learn English and to obtain a high school equivalency degree; this is not a qualifying post-secondary institution for a federal education credit.  Customer 3 did not tell Kuot that he attended a post-secondary educational institution or incurred any education-related expenses. Customer 3 did not know that Kuot falsely reported education-related expenses and claimed an education credit on his tax return.  As a result of the fabricated education expense and

American Opportunity credit, Kuot claimed a bogus refund in the amount of $3,984 on Customer 3's 2022 tax return.

**Customer 10**

111.    Guot is identified as the preparer of the 2022 federal income tax return of Customer 10 of Cactus, Texas. Customer 10 communicated with the return preparer by telephone. Customer 10's highest level of education is 8th grade, and he has never attended college. Customer 10 provided the preparer with copies of his ID, social security number, and Form W-2 from his job.

112.    On Customer 10's 2022 tax return, Guot falsely claimed that Customer 10 incurred $4,000 in education-related expenses to attend Amarillo Community College. Customer 10 did not tell Guot, or anyone else who assisted in the preparation of the tax return, that he attended Amarillo Community College or incurred any education-related expenses. Customer 10 did not know that the preparer falsely reported education-related expenses and claimed an education credit on his tax return.  As a result of the fabricated education expense and American Opportunity credit, Guot claimed a bogus refund in the amount of $2,541 on Customer 10's 2022 tax return.

**Customer 11**

113.    Guot is identified as the preparer of the 2022 federal income tax return of Customer 11 of Dumas, Texas. Customer 11 communicated with the return preparer by text message. Customer 11 did not attend college or incur any education-related expenses in 2022. Customer 11 provided the preparer with copies of his ID, social security number, and Form W-2 from his job.

114.    On Customer 11's 2022 tax return, Guot falsely claimed that Customer 11 incurred $3,887 in education-related expenses to attend Amarillo Community College. Customer 11 did not tell Guot, or anyone else who assisted in the preparation of the tax return, that he attended Amarillo Community College or incurred any education-related expenses. Customer 11 did not know that the preparer falsely reported education-related expenses and claimed an education credit on his tax return.  As a result of the fabricated education expense and American Opportunity credit, Guot claimed a bogus refund in the amount of $2,764 on Customer 11's 2022 tax return.

**Customers 12 and 13**

115.    Kuot prepared the 2022 federal income tax return of Customers 12 and 13 of Lincoln, Nebraska, at the Golden Heart office located at 2425 Douglas Street, Omaha, Nebraska. The tax return incorrectly identifies Guot as the paid preparer. Customer 12 met with the preparer to have the tax return prepared.

116.    In 2022, neither Customer 12 nor Customer 13 attended college or incurred any education-related expenses. Customer 12 mentioned to Kuot that his wife, Customer 13, was planning on attending community college in the future.

117.    On the 2022 tax return of Customers 12 and 13, Kuot falsely claimed that Customer 13 incurred $4,000 in education-related expenses to attend a South East Community College.  Customer 12 did not tell Kuot that Customer 13 attended South East Community College or incurred any education-related expenses in 2022. As a result of the fabricated education expense and American Opportunity credit, Kuot claimed a bogus refund in the amount of $12,303 on the 2022 tax return of Customers 12 and 13.

118.    Customer 12 does not know how much he was charged to have the tax return prepared because the fee was taken from the refund.

**Undisclosed Fees**

119.    The Defendants charge high fees to prepare tax returns, which are typically charged without customers' knowledge.  The Defendants charge these high fees to prepare and file false tax returns with unnecessary and bogus forms and schedules attached, when they should have honestly prepared a basic Form 1040 tax return.

120.    The Defendants intentionally deceive customers regarding the fees charged for the preparation of tax returns.

121.    The high fees charged are a strong incentive for the Defendants, and those acting at their direction or with their knowledge and consent, to prepare and file fraudulent returns claiming excessive refunds based on bogus claims and associated forms and schedules.

122.    The high fees frequently can pose a significant financial hardship for customers. Customers may be required to pay back the improper refunds that they receive.  Because the Defendants deduct their high fees directly from their customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees. Thus, customers are then out-of-pocket the fees that the Defendants charged.

123.    The Defendants, and those acting at their direction or with their knowledge and consent, also routinely and intentionally fail to disclose to customers all fees charged.  The Defendants, and those acting at their direction or with their knowledge and consent, present forms to customers to sign, including a form acknowledging the fees charged, without allowing the customer to closely review or understand the forms they are signing (particularly customers who cannot read or understand English).  Alternatively, the Defendants, and those acting at their

31

direction or with their knowledge and consent, tell customers one amount for fees and then later increase the fees without the customers' knowledge or consent.

124.    Customers are often surprised to learn that the refund requested on their return is hundreds if not thousands of dollars more than the refund amount that they received after the fees were deducted. For example, Customer 2 was not told the fee, but based on the amount of the tax refund she received for 2022, the preparer took over $800 in fees from her refund. Customer 5 was not told the tax preparation fee but based on the amount of the tax refund that he received for 2022, the preparer took as much as $1,000 in fees from his refund. Customer 6 was not told the tax preparation fee but based on the amount of the tax refund that she received for 2021, the preparer took around $1,000 in fees from her refund. Customers 12 and 13 were not told the tax preparation fees but based on the amount of the tax refunds that they received for 2021 and 2022, the preparers took around $1,000 in fees from their refunds each of these years.

125.    The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund.  By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the customers pay to have their tax return prepared. Customers typically do not discover that the fees charged are much more than the customers anticipated for the preparation of their tax return until the customers receive a refund that is much less than quoted by the tax return preparer, after the Defendants subtracted their high fees.

126.    The Defendants' practice of charging large and undisclosed fees interferes with the administration and enforcement of the Internal Revenue laws. Such behavior erodes consumer confidence in tax return preparers and dissuades taxpayers from seeking professional assistance with the preparation of their federal tax returns.

**Failure to Provide Customers with Copies of their Completed Tax Returns
in Violation of 26 U.S.C. § 6701(a)**

127.    The Defendants, and those acting at their direction or with their knowledge and consent, fail to provide customers with copies of their completed tax returns.  The completed tax return, filed with the IRS, shows the refund that the Defendants are claiming for the customer. For example, a customer who is provided a copy of a tax return showing the actual tax refund claimed is able to determine the amount of fees that the Defendants charged by subtracting the amount of the refund that the customer actually receives from the amount of the refund claimed on the tax return.  The Defendants' failure to provide a copy of a customer's completed tax return is part of the strategy to conceal the actual fees from their customers.

128.    Failing to provide a customer with a copy of the completed tax return also violates 26 U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of [a tax return or claim for refund] to the taxpayer not later than the time such return or claim is presented for such taxpayer's signature."

129.    Customers who do receive a copy of the tax return often receive only the first two pages of the Form 1040, but not the other forms filed with the return, such as Forms Schedule C ("Profit or Loss from Business"), Forms 4136 ("Credit for Federal Tax Paid on Fuels"), and Forms 7202 ("Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals"). This is because the Defendants make false claims on these forms and, to conceal the claims from customers, do not provide customers with copies of these completed forms. For example, the Defendants did not provide complete copies of the completed and filed tax returns to Customer 2 (2021 tax return missing the Schedule C and Form 7202, which reported false information), Customer 5 (no copy of anything, including Form 1040), or Customer 6 (no copy of anything despite multiple requests).

33

**Failure to Identify the Actual Preparer of Customers' Tax Returns
in Violation of 26 U.S.C. §§ 6695(b) and 6695(c)**

130.    The Defendants prepare tax returns for customers on which they do not identify themselves as the paid preparer.  As discussed in some of the examples above, many tax returns identifying one individual as the paid preparer were actually prepared by another individual who was not properly identified on the tax return.  During the IRS's 2018 investigation into whether Ajak complied with the "due diligence" requirements, Ajak told the investigator that Ajak allowed other tax return preparers at Golden Heart to prepare tax returns using his Preparer Tax Identification Number (PTIN).  The Defendants' improper sharing of PTINs or preparation of tax returns using another's PTIN, in violation of 26 U.S.C. § 6695, continues. For example, Customers 1, 2, 4, 9, and 12 all stated that someone other than the person identified as the preparer of their tax return actually prepared the return.

131.    A tax return preparer who fails to sign a tax return that he or she prepares violates 26 U.S.C. § 6695(b).  A tax return preparer, or employer of a tax return preparer, who fails to report an identifying number of the tax return preparer or the employer on a tax return that the preparer or an employee prepares, violates 26 U.S.C. § 6695(c).

**Harm Caused by the Defendants**

132.    The Defendants' preparation of false and fraudulent tax returns at their tax return preparation stores, false and misleading statements directed to customers and potential customers, and culture favoring volume and ill-gotten profits over accuracy and integrity have harmed the public and the United States Treasury. These practices harm the public because the Defendants and those acting at their direction or with their knowledge and consent prepare false or fraudulent tax returns that understate their customers' correct income tax liabilities and

illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

133.    The Defendants' misconduct (and that of those acting at their direction or with their knowledge and consent) harms the United States Treasury by causing lost tax revenue.  As noted above in paragraph 17, the IRS estimates the harm in 2021, 2022, and 2023 (for tax years 2020, 2021, and 2022) alone could be as much as $10 million or more.

134.    The Defendants' customers have also been harmed because they relied on the Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest.

135.    Customers are harmed by the high and frequently undisclosed fees tied to anticipated tax refunds. These fees are subtracted from the bogus refunds that result from the false or fraudulent tax return preparation perpetrated by the Defendants, and those acting at their direction or with their knowledge and consent. When the IRS conducts audits or examinations of customers and seeks repayment of these bogus refunds, the customers are liable for the repayment of those refunds. Not only do customers face the hardship associated with repayment of bogus refunds resulting from the Defendants' greed at others' expense, but customers may also have to repay the portion of the refund that the Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and filed by the Defendants and those acting at their direction or with their knowledge and consent.

136.    The Defendants' misconduct further harms the United States and the public by requiring the IRS to devote some of its resources to detecting their false claims on tax returns and assessing and collecting lost tax revenues from the Defendants' customers.  Consequently, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

137.    The Defendants' misconduct also causes intangible harm to honest tax return preparers who unfairly lose business to the Defendants due to their willingness to break the law in order to obtain larger (albeit fraudulent) tax refunds by fabricating claims and deductions on customers' tax returns.

138.    Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

139.    The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers.  An injunction will serve the public interest because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

**Count I**
**Injunction under 26 U.S.C. § 7407**

140.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that

specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

a. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

b. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

c. Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

d. Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

e. Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

141.    Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

142.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, as shown above in paragraphs 5 through 139, are tax return preparers who have repeatedly and continually prepared or submitted returns or portions of returns (or employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return. Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC also advise, instruct, direct, assist, and/or cause others to engage in tax fraud, and

to prepare federal income tax returns asserting unreasonable, unrealistic, frivolous and fraudulent positions. Accordingly, Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC knew (or should have known) of the unreasonable, unrealistic, frivolous and fraudulent positions.

143.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal tax returns that understate their customers' liabilities based on unrealistic, frivolous and reckless positions. Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, through the actions described above, also recklessly or intentionally disregard IRS rules or regulations.

144.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695. The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from claiming head of household filing status, the EITC, and other credits (including the American Opportunity credit) without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011).  Not only do Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC fail to conduct proper due diligence or comply with the due diligence requirements, but they also advise, encourage, assist, and/or cause others acting with their knowledge or consent to circumvent the due diligence requirements and to ignore or disregard the information provided by customers.

145.    Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden D4 Heart Tax Services, LLC's failure to comply with the due diligence requirements for the EITC violates Treasury Regulations and their willingness to falsify information to obtain the EITC and other tax credits for their customers shows a reckless and/or intentional disregard of IRS rules and regulations.

146.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and those acting in concert with them and at their direction, have continually and repeatedly prepared federal income tax returns that claim the EITC for customers, where Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and those acting in concert with them and at their direction, have not conducted, let alone documented, the required due diligence procedures.

147.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC also fail to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

148.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC also fail to comply with 26 U.S.C. §§ 6695(b) and 6695(c), which require that a tax return preparer identify the actual paid preparer of the tax return.

149.    Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden D4 Heart Tax Services, LLC's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

150.    Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden D4 Heart Tax Services, LLC's continual and repeated fraudulent or deceptive conduct

that substantially interferes with the proper administration of the internal revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and thus is subject to an injunction under 26 U.S.C. § 7407.

151.    If Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC are not enjoined from all tax preparation, they and those acting in concert with them and at their direction are likely to continue to prepare and file false and fraudulent tax returns.

152.    Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden D4 Heart Tax Services, LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden D4 Heart Tax Services, LLC's interference with the proper administration of the internal revenue laws. Accordingly, Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC should be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

### Count II
### Injunction under 26 U.S.C. § 7408

153.    Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

154.    Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax

return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability. Under 26 U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

155.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, through the actions detailed above in paragraphs 5 through 139, caused the presentation and preparation of false, fraudulent, and abusive tax returns and other documents. Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC prepare, assist, and/or advise with respect to the presentation and preparation of federal tax returns for customers that they know will understate their correct tax liabilities, because Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC knowingly prepare, assist, and/or advise with respect to the presentation and preparation of returns claiming bogus expenses and deductions. Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC procured and assisted the preparation of false and fraudulent tax returns by filing and encouraging the filing of tax returns they knew were false or fraudulent.  Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC have thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

156.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC are likely to continue violating the law absent an injunction. Tax return preparation is Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden

D4 Heart Tax Services, LLC's primary source of revenue. To maximize that income, Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC prepare, and instruct and direct others to prepare, fraudulent tax returns. That fraudulent conduct, in turn, gives Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC a competitive edge over law-abiding preparers. It also provides a means for Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to further exploit their customers by charging them high and undisclosed fees, while Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden D4 Heart Tax Services, LLC's fraud simultaneously and callously exposes their customers to possible civil and criminal liability.

157.    If the Court does not enjoin Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701.  The preparation of tax returns claiming improper expenses and deductions by Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and those acting in concert with them and at their direction, is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

158.    Section 7402 of the Internal Revenue Code authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

159.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, through the actions described above in paragraphs 5 through 139,

including, but not limited to, intentionally understating their customers' tax liabilities and charging unconscionable and undisclosed fees for the preparation of federal tax returns that intentionally understate their customers' tax liabilities, have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

160.    Unless enjoined, Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and those acting in concert with them and at their direction, are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC are not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer irreparable injury by providing federal income tax refunds to individuals not entitled to receive them.

161.    While the United States will suffer irreparable injury if Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC are not enjoined, Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC will not be harmed by being compelled to obey the law.

162.    Enjoining Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden D4 Heart Tax Services, LLC's illegal conduct and the harm it causes the United States and the Defendants' customers.

163.    The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

**Count IV**
**Disgorgement under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

164.    Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

165.    Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden D4 Heart Tax Services, LLC's conduct, described above in paragraphs 5 through 139, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them.  Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC have unjustly profited at the expense of the United States by subtracting their tax preparation fees from those refunds.

166.    Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC are not entitled to these ill-gotten gains. But for the Defendants' conduct, these bogus refunds would not have been issued.

167.    The Court should enter an order under 26 U.S.C. § 7402(a) requiring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to disgorge to the United States the ill-gotten gains (in the form of fees subtracted from customers' tax refunds) that Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC received for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

A.      That the Court find that Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.      That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC from acting as federal tax return preparers;

C.      That the Court find that Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D.      That the Court find that Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and all those in active concert or participation with them, from:

(1)    acting as federal tax return preparers or requesting or soliciting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

(2)    preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

(3)    owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

(4)    training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(5)    collecting or gathering Forms W-2 and Forms 1099 from individuals or entities who want to have a federal tax return prepared, or referring any person or entity to a tax preparation firm or to a tax return preparer or otherwise suggesting that a taxpayer engage any given tax preparation firm or tax return preparer;

(6)    maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(7)    engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

(8)    engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F.    That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to immediately and permanently close all tax return preparation stores that they own directly or through any other entity;

G.    That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax

Services, LLC, directly or through any other entity, from assigning, transferring, or selling any consulting agreement, independent contractor agreement, or employment contract related any tax return preparation business to which they or any entity under their control is a party, or has been a party since 2016;

H.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC from: (1) selling to any individual or entity a list of customers, or any other customer information, for whom Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and any other business or name through which Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, or those acting at their direction, have at any time since 2016 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former manager, tax return preparer, employee, consultant, or independent contractor of Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, or any other business through which Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC prepare tax returns or own or franchise a tax return preparation business, a list of customers or any other customer information for customers for whom Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and any other business or name through which Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, or those acting at their direction, have at any time since 2016 prepared a tax return; and (3) selling to any individual or entity any proprietary information pertaining to any business or name through which Mayuen K. Ajak, Yier B. Deng,

Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, or those acting at their direction, have at any time since 2016 prepared a tax return;

I.      That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to disgorge to the United States the ill-gotten gains (the amount of which is to be determined by the Court) that Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC received (in the form of fees subtracted from customers' tax refunds) for the preparation of tax returns that make or report false and/or fraudulent claims, deductions, credits, income, expenses, or other information that results in the understatement of taxes, prepared since 2016 by Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and at any tax preparation store owned or managed by Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC;

J.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to contact, within 30 days of the Court's order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and their managers, employees, tax return preparers, consultants, and independent contractors prepared federal tax returns or claims for a refund since 2016 and continuing through this litigation to inform them of the permanent injunction entered against them, including sending a copy of the order of permanent injunction but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

K.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC, and their managers, employees, tax return preparers, consultants, and independent contractors prepared federal tax returns or claims for a refund since 2016 and continuing through this litigation;

L.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, address, e-mail address, and telephone number all principals, officers, managers, employees, tax return preparers, consultants, and independent contractors of Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC from 2016 to the present;

M.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to provide a copy of the Court's order to all principals, officers, managers, employees, tax return preparers, consultants, and independent contractors of Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC within 15 days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Mayuen K.

Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC provided a copy of the Court's order;

N.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC to each file with the Court within 45 days of the Court's order a sworn affidavit attesting that they have complied with the requirements set forth in paragraphs J through M above;

O.      That the Court retain jurisdiction over Mayuen K. Ajak, Yier B. Deng, Bol C. Guot, Gabriel M. Kuot, and Golden D4 Heart Tax Services, LLC and over this action to enforce any permanent injunction entered against them;

P.      That the United States be entitled to conduct discovery to monitor Mayuen K. Ajak's, Yier B. Deng's, Bol C. Guot's, Gabriel M. Kuot's, and Golden D4 Heart Tax Services, LLC's compliance with the terms of any permanent injunction entered against them; and

Q.  That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

DATED: April 2, 2024                  LEIGHA SIMONTON
                                      United States Attorney
                                      DAVID A. HUBBERT
                                      Deputy Assistant Attorney General

                                       s/ Daniel A. Applegate
                                      DANIEL A. APPLEGATE
                                      Trial Attorney, Tax Division
                                      U.S. Department of Justice
                                      P.O. Box 7238, Ben Franklin Station
                                      Washington, D.C.  20044
                                      Telephone: (202) 353-8180
                                      Fax: (202) 514-6770
                                      daniel.a.applegate@usdoj.gov