IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-00784-E |
| | § | |
| MAYUEN K. AJAK et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Plaintiff United States of America's (the "Government") Motion for Temporary Restraining Order and Preliminary Injunction against Defendants Mayuen Ajak, Yier Deng, Bol Guot, Gabriel Kuot, and Golden D4 Heart Tax Services d/b/a Golden Heart Tax Services, LLC (collectively the "Defendants"). (ECF No. 22). On January 23, 2025, the Court entered an order granting a Temporary Restraining Order against Defendants and setting a briefing schedule. (ECF No. 32). Defendants filed their response. (ECF No. 33). The Government filed its reply. (ECF No. 34). For the reasons that follow, the court GRANTS the motion and enters a preliminary injunction against Defendants.

I. BACKGROUND

The Government filed the instant case on April 4, 2024, seeking relief under 26 U.S.C. §§ 7402, 7407, and 7408. (ECF No. 1). It then sought a Temporary Restraining Order on January 21, 2025, in advance of the 2025 tax season.

Mayuen Ajak, Yier Deng, Bol Guot, and Gabriel Kuot have prepared tax returns for others since, at least, 2016. (ECF No. 22 at 8). In 2018 they incorporated Golden D4 Heart Tax Services,

LLC, in Texas, of which they are each "25% owners." (ECF No. 33-1 at 3). Golden Heart operates tax preparation stores in Texas, Missouri, Nebraska, and Arizona. (ECF Nos. 22 at 8). According to Defendants, the makeup of their clientele is, "approximately 60% [] South Sudanese, 20% [] Middle Eastern, 10% [] Hispanic, and 10% [] individuals from African counties besides South Sudan as well as various non-African groups." (ECF No. 33 at 6). Defendants primarily cater to "clients who are born outside of the United States and possess limited English proficiency" . . . "[b]y actively recognizing and communicating in various languages and dialects." (ECF No. 33-1 at 3). Each named Defendant has individually prepared tax returns and the Internal Revenue Service ("IRS") identified thousands of tax returns filed cumulatively by Defendants for tax years 2015 through 2024. (ECF No. 22 at 9).

The Government claims that Defendants have repeatedly engaged in the following fraudulent practices: (1) failing to properly identify themselves as the paid preparers of tax returns that they personally prepared; (2) claiming false fuel tax credits; (3) falsifying Form Schedule C deductions by fabricating businesses and reporting profit or losses from a false business or inflating profits and losses from an actual business; (4) falsifying a customer's earned income tax credit; (5) failing to conduct proper due diligence; (6) falsifying COVD-19 credits; (7) claiming false education credits; and (8) failing to disclose fees and provide customers complete copies of their returns. In support of their claims the Government submitted over 6,000 documents into the record. Defendants, despite being on notice of the Government's claims provided no controverting evidence. (*See generally* ECF Nos. 22-30).

The record establishes that many tax returns prepared by Defendants do not properly identify the party who did the actual tax preparation. (ECF No. 22 at 20). There have been years in which Golden Heart has reported just one, or primarily one, PTIN number (the identification

number for tax preparers assigned by the Internal Revenue Service) for all tax returns filed. (ECF No. 22 at 20). Individual defendants have explained that customer tax returns are prepared by someone in Dallas, regardless of who the customers met with or communicated with at their local stores. (ECF No. 22 at 20). Further, tax returns often do not have a singular tax preparer—one person may enter the W-2 information while Schedule C business or education credits are added by another prior to filing. (ECF No. 22 at 20). This behavior is compounded, and frequently undiscovered by customers, because Defendants fail to provide a copy of the completed tax returns to each customer, nor do Defendants review the completed returns with said customers. (ECF No. 22 at 20).

The record also establishes that Defendants have falsified prepared tax returns in myriad ways. (*See generally* 22-30). First, the Earned Income Tax Credit ("EITC")[1] requires the preparer to conduct "due diligence" and make "reasonable inquiries" to ensure the customer is entitled to the EITC. (ECF No. 22 at 16). However, the record establishes that Defendants regularly fail to comply with due diligence standards set by claimed tax credits. (*See generally* ECF No. 22) In 2018 the IRS assessed penalties against Defendant Ajak in the amount of $56,610 for 111 violations under 26 U.S.C. §6695(g). (ECF No. 22 at 17). Again, in 2022, the IRS assessed penalties against Defendant Ajak in the amount of $82,620 for 153 violations for failure to comply with due diligence when claiming the EITC in addition to (i) Child tax credit; (ii) American Opportunity tax credit; and (iiii) Head of Household filing status. (ECF No. 22 at 17).

Defendants allege that they "make every effort to comply with federal laws pertaining to the preparation of federal income tax returns." (ECF No. 33 at 8). However, they have provided no controverting evidence to the record established by the Government.

---

[1] The EITC is a refundable tax credit available to low-income workers, which can reduce a taxpayer's tax liability below zero, enabling the customer to receive a payment from the U.S. Treasury. 26 U.S.C. § 32.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is to be granted "only when the movant, by a clear showing, carries the burden of persuasion" as to each element. *Digital Generation, Inc. v. Boring*, 869 F.Supp.2d 761, 772 (N.D. Tex. 2012) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). The standard for a preliminary injunction is the same as the standard for a temporary restraining order (TRO). *Miss. Power & Light Co. v. United Gas Pipe Line C*o., 760 F.2d 618, 621 (5th Cir. 1985). Determining whether to grant the [preliminary injunction] is within the sound discretion of the district court. *Id.* To be entitled to a preliminary injunction, a movant must establish (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015) (quoting *Trottie v. Livingston*, 766 F.3d 450, 451 (5th Cir. 2014)). If a party fails to satisfy any one of the four elements, a district court may not grant a preliminary injunction. *Miss. Power*, 760 F.2d at 621.

However, the traditional preliminary injunction standard does not apply, and the court need not engage in that analysis, when injunctive relief is "explicitly authorized by statute." *Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 157 (5th Cir. 1982) (citations omitted). "When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." *Donovan*, 666 F.2d at 157 (citations omitted); *see United States v. Sang*, 2022 WL 581012, at *6 (E.D.N.Y. Feb. 26, 2022) (noting that "[b]ecause section 7407 sets forth statutory conditions for equitable relief, the Court may issue a preliminary injunction if those

conditions are met, without engaging in the traditional analysis for injunctive relief"); *United States v. Madzima*, 2009 WL 2596599, at *1 (N.D. Tex. Aug. 21, 2009) ("Because I.R.C. §§ 7407 and 7408 set forth specific criteria for injunctive relief, the United States need only meet those statutory criteria, without reference to traditional equitable factors, for this Court to issue an injunction under those sections.")."[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) (citation omitted). "Thus, the district court can accept evidence in the form of deposition transcripts and affidavits." *Sierra Club, Lone Star Chapter*, 992 F.2d at 551 (citation omitted).

### III.   ANALYSIS

#### A. Preliminary Injunction Under 26 U.S.C. § 7407

To obtain an injunction under 26 U.S.C. § 7407, the Government must prove:

> (1) that a tax return preparer has—
>   (A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,
>   (B) misrepresented [their] eligibility to practice before the Internal Revenue Service, or otherwise misrepresented [their] experience or education as a tax return preparer,
>   (C) guaranteed the payment of any tax refund or the allowance of any tax credit, or
>   (D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, and
> (2) that injunctive relief is appropriate to prevent the recurrence of such conduct.

26 U.S.C. § 7407(b). Further, "if the court finds that the Defendant has 'continually or repeatedly engaged in' such unlawful conduct 'and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court

may enjoin [him] from acting as a tax return preparer.'" *United States v. Umbrella Fin. Servs., LLC*, 715 F.Supp.3d 967, 974 (N.D. Tex. 2024) (citing 26 U.S.C. § 7407(b)).

First, the Government has proved that Defendants are tax return preparers as contemplated under § 7407. The Internal Revenue Code defines a "tax return preparer" as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax." 26 U.S.C. § 7701(a)(36)(A). The record supports that the Defendants have prepared taxes, both individually and by directing others, for compensation—Defendants' attached declaration specifically asserts that, "[d]efendants prepare their clients' federal income tax returns based on the information that their customers provided and upon their then-understanding of applicable rules and laws." (ECF No. 33-1 at 4).

The Government has also proved that the Defendants have engaged in unlawful conduct under § 7407(b), conduct that is subject to penalty under both sections 6694 and 6695. Another district court in the Northern District of Texas has discussed unlawful conduct under section 6694:

> "Section 6694 makes it unlawful for a tax preparer to understate a taxpayer's liability if there is no reasonable basis for the position and the tax preparer knew or reasonably should have known of the position." *United States v. Johnston*, 2022 WL 17978909, at *3 (E.D. Tex. May 12, 2022) (citing 26 U.S.C. § 6694(a)). "A tax preparer act[s] unreasonably, and [is] subject to penalties under Section 6694(a), where the tax preparer's conduct [is] pervasive and 'resulted in a significant understatement of [her] clients' tax liabilities[.]'" *Id.* (quoting *United States v. Fontenot*, 2011 WL 13195835, at *10 (E.D. Tex. Aug. 29, 2011)). Section 6694 also makes it unlawful "for a tax preparer to willfully attempt to understate a taxpayer's liability or recklessly or intentionally disregard rules or regulations regarding tax preparation." *Id.* (citing 26 U.S.C. § 6694(b)). "[A] willful understatement of tax liability includes situations where an income tax preparer disregards facts supplied to [her] by the taxpayer (or others) in an attempt to reduce the taxpayer's liability .... It can also include an intentional disregard of Internal Revenue Code rules and regulations." *Fontenot*, 2011 WL 13195835, at *10.

*Umbrella Fin. Servs., LLC*, 715 F.Supp.3d at 975. The Government alleges that "[d]efendants continually and repeatedly violated §§ 6694(a) and (b) by preparing tax returns intentionally reporting phony income, expenses, deductions, and credits." (ECF No. 22 at 24). Defendants respond that they "make every effort to comply with federal laws pertaining to preparation of federal income taxes." (ECF No. 33 At 15). However, the record supports the Government's contention that Defendants have prepared numerous tax returns that "improperly claims false fuel tax credits," Forms Schedule C business expenses, education credits, and COVID-19 related tax credits which reduced their customers' taxable income or tax due. (ECF No. 22 at 7-8). Courts across the nation have held this conduct is unlawful under § 6994. *See, e.g.*, *United States v. Johnston*, 2022 WL 17978909, at *4 ((E.D. Tex. May 12, 2022) ("unreasonably understat[ing] the liability of numerous tax returns by fabricating false Schedule C business expenses" violates § 6694); *United States v. Stinson*, 239 F.Supp.3d 1299, 1319 (M.D. Fla. 2017) (preparing tax returns with false and improper claims that wrongfully reduces taxpayers' liability violates § 6694).

The Government has also proven that Defendants violated § 6695. Another district court in the Middle District of Florida has discussed unlawful conduct under § 6695:

> Section 6695 of the Internal Revenue Code penalizes a tax preparer who fails to: furnish a copy of the tax return to the taxpayer; to sign a tax return; to furnish an identifying number that would secure the tax preparer's proper identification; to retain a copy or list of the tax return pursuant to § 6107(b); or claim the EITC without complying with the statutory due diligence requirements. 26 U.S.C. § 6695(a)–(d), (g).

*Stinson*, 239 F.Supp.3d at 1320. The Government alleges that "[d]efendants violate § 6695(c) by not identifying on customers' tax returns the true preparer of the return" and "§ 6695(g) because, by deliberately fabricating claims and deductions on customers' tax returns, they completely disregard the due diligence requirements." (ECF No. 22 at 24). The Defendants respond to

allegations brought under § 7407 by baldly asserting that Defendants (i) "did not engage in the conduct the United States alleges in the Motion", (ii) "have implemented changes in their procedures and reporting positions to ensure compliance with the law", and (iii) "are willing to implement any additional procedures that may be necessary." (ECF No. 33 at 18). However, the record establishes that Defendants prepare tax returns which identify one individual as the paid preparer while the tax returns are, in actuality, being prepared by another person. (ECF No. 22 at 20). Defendant Ajak has made statements to the IRS that "he allowed other tax return preparers at Golden Heart to prepare tax returns with his PTIN." (ECF No. 22 at 20). This claim was corroborated by Defendant Deng when he stated that "customer tax returns are prepared by someone in Dallas, regardless of who the customers meet with or communicated with at their local store." (ECF No. 22 at 20). As a result, there have been years in which Golden Heart tax returns report primarily one PTIN on all tax returns filed. (ECF No. 22 at 20).

The record additionally demonstrates numerous examples of due diligence violations by Defendants. Analogously, the court in *Stinson* explains regarding due diligence, "it is inherently impossible to conduct proper due diligence while fabricating claims and amounts on a tax return. Due diligence requires the tax return preparer to make 'reasonable inquiries' to ensure a taxpayer's entitlement to the EITC. 26 C.F.R. § 1.6995–2. Putting a fake amount on a taxpayer's tax return is not due diligence." *Stinson*, 239 F.Supp.3d at 1320. Here, the record indicates that Defendants not only failed to conduct proper due diligence in regard to the EITC but also the American Opportunity education credit, the Child Tax Credit, and Head of Household filing status. (ECF No. 22 at 16). Through establishment of the violations of §§ 6694 and 6695, the Government has also shown that injunctive relief is appropriate to prevent further misconduct by the Defendants.

Courts customarily consider the totality of circumstances and the following factors in determining the appropriateness of injunctive relief under sections 7407 and 7408:(1) the gravity of harm caused by conduct; (2) the extent of the Defendant's participation and their degree of scienter; (3) whether the infraction was isolated or recurrent in nature and the likelihood that the Defendant's business activities might again involve them in such transactions; the Defendant's recognition of their own culpability; and the sincerity of the Defendant's assurances against future violations. *United States v. Buttorff,* 761 F.2d 1056, 1062–63 (5th Cir.1985).

In weighing the factors, they support the issuance of a preliminary injunction against Defendants. The record establishes that the Defendants have caused extensive harm as they (i) have repeatedly made false claims on tax returns which generate "large, bogus refunds" which deprive the Government of duly owed taxes; and (ii) falsely reported to the IRS that they comply with due diligence requirements necessitating the IRS to expend resources and funds to investigate the conduct. The record indicates that the IRS has twice already investigated and assessed penalties against Defendant Ajak in 2018 and 2022 in the amount of $56,610.00 and $82,620.00, respectively. (ECF No. 22 at 17). As the above indicates, Defendant's conduct is not isolated to a single incident of error but is a pattern established through the record accounting for a minimum of six years. (*See generally* ECF No. 22). This conduct not only costs the Government time, money, and resources, it interferes with the Government's ability to properly function and administer the internal revenue laws. Finally, the record contains no indication that Defendants have acknowledged their conduct as unlawful. Defendants, on notice of the voluminous record established by the Government, submitted no controverting evidence, but baldly assert that,

> [t]o begin with, Defendants did not engage in the conduct that the United States alleges in the Motion. Defendants make every effort to comply with federal laws pertaining to preparation of federal income tax returns. Defendants prepared their customers' federal

> income tax returns based on information that their customers provided and based upon their then understand[ing] of the applicable rules and laws. As such, Defendants intend to prove at trial that they have substantially complied with all legal requirements pertaining to tax return preparers and certainly have not willfully violated the law.

(ECF No. 33 at 15). Considering these factors, as well as the totality of circumstances, the court finds that injunctive relief is warranted to prevent the recurrence of Defendants' conduct.

Beyond satisfying the required factors for an injunction under § 7407, the court finds that Government is entitled to a broader injunction prohibiting Defendants from acting as tax preparers. The court may issue an injunction barring an individual from acting as a tax preparer altogether where they "ha[ve] continually or repeatedly engaged in" the unlawful conduct alleged, such that "an injunction prohibiting such conduct would not be sufficient to prevent [their] interference with the proper administration" of the internal revenue laws. 26 U.S.C. § 7407(b). Courts use the same factors "to assess whether to enjoin the Defendant from engaging in the prohibited conduct or from acting as a tax preparer altogether." *Johnston*, 2022 WL 17978909, at *5 n.1

As explained above, Defendants have engaged in behavior violative of §§ 6694 and 6695 for a period of, at least, six years. (ECF No. 22). Specifically, they have prepared tax returns in a way which makes it difficult for the Government to identify which tax returns each Defendant has personally prepared. (ECF No. 22 at 8). Considering this, the court concludes that a narrower § 7407 injunction is insufficient to prevent misconduct.

For the above reasons, the record indicates that the Government has produced evidence to satisfy the requirements for an injunction against Defendants under § 7407. Therefore, this Court concludes that the Government is entitled to a preliminary injunction under § 7407.

### B. Preliminary Injunction Under 26 U.S.C. § 7408

To obtain an injunction under 26 U.S.C. § 7408, the Government must show that (1) the person to be enjoined has engaged in conduct subject to penalty under, inter alia, 26 U.S.C. § 6701(a); and (2) injunctive relief is appropriate to prevent recurrence of such conduct. See 26 U.S.C. § 7408. Section 6701(a) penalizes any person

> (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,
> (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and
> (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person[.]

26 U.S.C. § 6701(a). Simply put, § 6701(a) "imposes a penalty on any person who knowingly aids and abets others in underreporting [their] tax liability." *United States v. Simon*, 824 Fed.App'x. 986, 990 (11th Cir. 2020) (citing § 6701(a)).

The record establishes that the Government is entitled to an injunction under § 7408 as they have shown that Defendants engaged in conduct subject to penalty under § 6701(a). As explained above, and in the record, thousands of customers utilized Defendants as their tax return preparers, and there is evidence that Defendants either prepared or aided, assisted in, or directed the preparation of tax returns that bore incorrect names of tax preparers and/or fabricated deductions and losses. The record further establishes that Defendants "knew or had reason to believe that the returns they assisted in preparing would be used in calculating those customers' tax liability—an activity that courts have previously concluded is a 'material matter' arising under the internal revenue laws." *Umbrella Fin. Servs., LLC*, 715 F.Supp.3d at 977 (referencing *United States v. Salmon*, 2018 WL 6495070, at *15 (E.D.N.C. Dec. 10, 2018). Further, as explained above, *see*

*supra* § III(A), injunctive relief is warranted to prevent recurrence of this conduct. Therefore, this Court concludes that the Government is entitled to a preliminary injunction under § 7408.

### C. Preliminary Injunction Under 26 U.S.C. § 7402

Finally, the Government seeks injunctive relief under § 7402. As the court in *Umbrella Fin. Servs., LLC*, explains,

> Under 26 U.S.C. § 7402, the court may enter an injunction "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). This remedy is "in addition to and not exclusive of any and all other remedies" the court could order to enforce these laws. 26 U.S.C. § 7204(a). "[T]he majority of district courts in Texas and elsewhere" recognize "that the traditional requirements associated with injunctions need not necessarily be met in order to obtain a § 7402(a)-based injunction." United States v. Padron, 2017 WL 2060308, at *4 (S.D. Tex. May 12, 2017) (collecting cases). Nonetheless, the court is "free" to weigh the traditional factors when considering an injunction under this section. United States v. Grider, 2010 WL 4514623, at *2 (N.D. Tex. Nov. 2, 2010).

518 F.Supp.3d at 978.

As demonstrated above, *see supra* §§ III(A), (B), the Government has shown a substantial likelihood of success on the merits of its underlying claims. It has developed a record containing over 6,000 pages of documentation that support its contention that Defendants have violated sections §§ 6694 and 6695. (*See generally* ECF Nos. 23-30). Although Defendants have claimed that they "did not engage in the conduct that the United States alleges in this Motion []," they failed to offer into the record any contravening evidence. (ECF No. 33 at 18).

The Government has also demonstrated a substantial threat that it will suffer irreparable injury absent a preliminary injunction. "The Supreme Court has interpreted this factor to mean that plaintiffs seeking preliminary relief must 'demonstrate that irreparable injury is *likely* in the absence of an injunction.'" *Umbrella Fin. Servs., LLC*, 518 F.Supp.3d at 978 (citing *Winter v. Nat.*

*Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008) (emphasis in original)). Defendants argue that monetary damages can be sought by the Government, and thus, the harm is not irreparable. (ECF No. 33 at 20). Specifically, Defendants argue,

> The Government has a list and copy of every taxpayer and tax return prepared by the Defendants and has already identified, in detail, the alleged categorical deficiencies that it believes exist. It has civil examination authority; statutory and assessment authority; penalty and interest provisions to make it whole over time; the leverage of criminal statutes. It houses the world's largest tax collection agency with an unrivaled budget. Indeed, there will never be a litigant before this Court more well-positioned to render any claimed damages entirely "reparable."
>
> In point of fact, if the Government's (currently untested) largest estimate of alleged tax loss were accurate, such a loss to the Treasury would be less than .0000005% of the Treasury's current national debt—not an insubstantial amount for some purposes, to be sure, but certainly not an amount that would result in "irreparable harm." For a Treasury that collects upwards of $4.9 trillion in revenue annually, the Government cannot credibly maintain that four South Sudanese transplants who prepare a modest number of tax returns for primarily low-income individuals will cause "irreparable harm" if allowed to continue their legally owned business, particularly while they remain under an incredibly bright microscope and are involved in ongoing litigation surrounding the tax returns they prepare.

(ECF No. 33 at 20-21). However, the record establishes that Defendants have a track record of habitual fraudulent tax preparation activity which has resulted in the Government having to expend administrative resources investigating the Defendants and conducting audits of their prepared tax returns. (*See generally* ECF Nos. 22-30). This persuades the court that Defendants will continue to engage in activity which will likely cause the Government to suffer loss of tax revenue, expend its limited enforcement resources monitoring the Defendants, and undermine public confidence in the tax law. Defendants' argument that the government is not harmed because it *can* continue to expend resources to seek its duly owed tax obligations due to Defendants misconduct is unavailing.

In considering the balance of interests, the record establishes that an injunction's benefits and harms weighs in favor of the Government. The Defendants argue that the imposition of a preliminary injunction would "financially devastate the individual Defendants, their families, and other dependents" because "Golden Heart's tax preparation services are the primary source of income for most of the individual Defendants." (ECF No. 33 at 23). The Court is cognizant that, if an injunction is granted, Defendants will presumably suffer personal financial stability. However, because Defendants' "business model fundamentally depends on defrauding customers and the Government, which does not provide a legitimate source of income," any harm caused to Defendants by an injunction would be "substantially outweighed by the harm to which [their] clients" and the Government are subjected. *United States v. Marc*, 2020 WL 6064793, at *8 (M.D. Fla. Sept. 1, 2020).

Finally, in considering the benefit a preliminary injunction will serve to the public, this Court finds that the injunction will not disserve the public interest. There is a "broad public interest in maintaining a sound tax system." United States v. Grider, 2010 WL 4514623, at *4 (N.D. Tex. Nov. 2, 2010); *United States v. Lee*, 455 U.S. 252, 253 (1982). The Government argues that granting a preliminary injunction will "protect the public *from* the Defendants by sparing their customers from having false tax returns filed in their names and facing potential IRS audit[]," depleting the Treasury, and expending additional resources to attempt their recovery. (ECF No. 22 at 30). The traditional factors weigh in favor of granting a preliminary injunction. Therefore, this Court concludes that the Government is entitled to a preliminary injunction under § 7402.

*(this space is left intentionally blank)*

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** the Government's motion for a preliminary injunction against Defendants. A preliminary injunction will be filed today by separate order.

**SO ORDERED:** this 6th day of February, 2025.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE